### GREIF BROS. COOPERAGE CO. v. MULLINIX et al.

(Circuit Court of Appeals, Eighth Circuit. March 15, 1920.)

No. 5403.

1. **Appeal and error** ☞863—**Portions of decree not appealed from will not be disturbed.**

Where appellants sought review of only part of the decree, and there was no appeal from the remainder which was in appellant's favor, such portion of the decree remains in force and will not be disturbed.

2. **Bankruptcy** ☞11—**In administering estates, court of bankruptcy exercises equitable powers.**

In administering estates, court of bankruptcy exercises equitable powers.

3. **Equity** ☞3—**Court of equity can act only on the conscience of the party.**

A court of equity can act only on the conscience of a party, and if he has done nothing that taints it no demand can attach upon it, so as to give jurisdiction.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**4. Bankruptcy ⊕⟶140(3)—Equitable rights of one making agreed advances to bankrupt superior to those of trustee.**

Where, under a contract made seven months before bankruptcy, between a bankrupt and a cooperage company, that the former should manufacture and sell the product of his stave mill to the latter at fixed prices, and that the latter should advance, and it had advanced at the time of the bankruptcy, the moneys to enable the bankrupt to acquire materials and pay labor, and the bankrupt had on hand at the time of the bankruptcy a number of staves manufactured, the equitable rights of the cooperage company to such staves were superior to those of the trustee or unsecured creditors.

**5. Bankruptcy ⊕⟶140(3), 254—When trustee adopts executory contract, he assumes liability of bankrupt.**

When the trustee in bankruptcy, by order of the referee or of the court, elects to ratify, confirm, and adopt an executory contract of the bankrupt, he thereby assumes the liabilities of the bankrupt and takes the contract in the same plight in which the bankrupt held it; so, where the trustee adopted an executory contract for the manufacture of staves, under which a cooperage company had already made large advances, which enabled the bankrupt to manufacture staves found on hand at the time of the bankruptcy, the trustee is bound, just as was the bankrupt, to turn over the staves to the cooperage company.

**6. Partnership ⊕⟶32—Cooperage company, making advances to bankrupt, held not a partner.**

Where a corporation, under contract with individual bankrupt that it should receive all of the staves he manufactured, made advances, and such advances were merely for the purpose of enabling the individual to do business, no partnership between the parties was created.

**7. Bankruptcy ⊕⟶154—One making advances to bankrupt held to have equitable lien superior to creditors.**

Corporation, which made advances to a bankrupt to enable him to continue the manufacture of staves, under an agreement that the corporation should purchase the bankrupt's entire output, *held* to have equitable lien superior to the rights of other creditors, where the purchase price had been paid in advance, even though legal title to the property remained in the bankrupt; and hence, where the trustee adopted the contract and continued manufacturing staves under the same arrangement, the corporation cannot at a later date be required to pay for all of the staves turned over to it, without any deduction for advances.

Appeal from the District Court of the United States for the Eastern District of Arkansas; Jacob Trieber, Judge.

In the matter of the bankruptcy of George A. Booser. Petition by F. C. Mullinix, trustee, and another, against the Greif Bros. Cooperage Company. The referee denied the petition, and, the referee's determination having been reversed by the District Court, defendant appeals from the decree. Remanded, with directions to reverse and set aside the decree.

L. L. Campbell, of Newport, Ark., for appellant.

Arthur C. Eckert, of St. Louis, Mo. (H. M. Cooley, of Jonesboro, Ark., on the brief), for appellees.

Before SANBORN, Circuit Judge, and LEWIS and MUNGER, District Judges.

SANBORN, Circuit Judge. George A. Booser, the owner of a stave mill in Arkansas, was adjudged a bankrupt on July 18, 1917. At that time he was engaged in performing a contract which he had made on December 27, 1916, with Greif Bros. Cooperage Company,

a corporation engaged in the purchase and sale of staves and other materials for the making of barrels, to operate his mill diligently during the year 1917, and to deliver to that company the entire product thereof during that year as fast as it should be manufactured, in consideration of certain mill prices specified in the agreement, a certain percentage of the amounts, if any, in excess of the mill prices, for which the Greif Company should sell the staves, and certain advance payments of the purchase prices, which that company agreed to make him, to assist him in paying for necessary logs, materials, and labor in order to make the staves. In accordance with the terms of the contract, Booser, on the day of his adjudication, July 18, 1917, had manufactured and had on hand ready for delivery to the Greif Company about 1,442,400 staves, and that company had advanced in payment of the purchase prices of these staves, and of logs to be made into staves, about $20,500. Upon the adjudication the Greif Company presented by petition the situation to the referee in bankruptcy, who found that the trustee in bankruptcy was equitably bound to perform the contract, that its performance would be advantageous to the estate of the bankrupt, ratified and confirmed the agreement, ordered the trustee to comply with its terms and complete its performance, and that the staves on hand at the time of the adjudication and those subsequently manufactured during 1917 be delivered to the Greif Company and accounted for by it pursuant to the terms of the contract. In obedience to this judgment and order the Greif Company continued its advances, and both parties complied with the terms of the contract until it expired on December 31, 1917. On that day the trustee had on hand about 1,000,000 staves, which had been made under the terms of the contract and the order of the court, and a quantity of logs, and the Greif Company had advanced, pursuant to the order and terms of the contract, about $21,500 in payment of the purchase price thereof.

On January 16, 1918, upon a petition of the Greif Company and after a hearing thereon, at which the trustee entered his appearance and waived formal notice, the referee in bankruptcy found that the Greif Company had fully performed its contract; that on December 31, 1917, it had advanced according to the terms thereof $21,618.33 for timber, labor, and other expenses incident to the manufacture of the 1,000,000 staves on hand; that it had paid the consideration of those staves and was entitled to the delivery thereof and to the manufacture of the logs into staves; and it ordered that the trustee prepare the staves on hand for market and deliver them to the Greif Company, and that it manufacture the logs into staves, deliver them to the Greif Company, and collect of that company any moneys that might be due after the proceeds had been applied according to the terms of the contract of December 27, 1916. Upon the making of this order the trustee and the Greif Company made a new contract in substantially the same terms as those of the contract of December 27, 1916, for the manufacture and delivery of the product of the stave mill to the Greif Company during the year 1918, and the Greif Company and the trustee proceeded to comply with and were complying with this order and the contract of January 16, 1918, when in March of

that year the Northwestern Bank, a creditor of the bankrupt, upon a renewal of part of an indebtedness of Booser to it for $15,000, which was incurred many months before the contract of December 27, 1916, was made, presented a petition and an amended petition to the referee to vacate his order of January 16, 1918, and to declare the claim of the Greif Company against the estate of the bankrupt null and void on the ground (1) that Booser, the bankrupt, and the Greif Company, were partners; and (2) that the Greif Company had no legal title to or legal or equitable lien upon the staves and logs in the possession of the bankrupt at the time of his adjudication. The Greif Company answered the petition and denied its alleged equities, and the referee heard the evidence and arguments, found the facts which have been recited, and on April 10, 1918, ordered the petition of the bank dismissed for want of equity.

After a final hearing upon a petition of the bank and the trustee, for a review of this order and a vacation of the order of the referee of January 16, 1918, the court below adjudged and ordered (1) that the action of the referee in affirming and adopting the contract of December 27, 1916, be approved; (2) that the other orders of the referee be affirmed, except that the Greif Company be required to pay to the trustee the mill prices of the 1,442,400 staves on hand at the time of the adjudication and the percentage of the difference between the mill prices and the prices for which the Greif Company· sold these staves specified in the contract, less any amounts it had paid to the trustee on account of them, and that it account to the trustee for the full market value of· all the staves, lumber, logs, and material on hand at the time of the adjudication without giving any credit, offset, or allowance to it on account of the $20,500 it had advanced and paid to the bankrupt before that time in accordance with the terms of its contract in payment of the purchase price of those staves and logs.

[1] The Greif Company has appealed from this decree, and neither the bank nor the trustee has done so. Therefore that portion of the decree which affirmed the order of the referee made at the time of the adjudication in July, 1917, to the effect that the contract of December 27, 1916, be confirmed, ratified, and adopted· by the trustee, and that he "complete the same and fully comply with its terms," still stands unchallenged and in full force. Pursuant to that contract the Greif Company had before the adjudication advanced and paid to Booser, the bankrupt, in payment of the purchase price of the staves on hand at that time and those yet to be made, $20,500, an amount in excess of the entire purchase price of the staves then on hand, to the immediate delivery of which and to the proceeds of their sale the Greif Company was then entitled under the agreement. It was in this state of the case that the referee ordered the trustee to adopt and perform the contract, to deliver to the Greif Company the staves on hand, for which it had already paid, and to account to it for the proceeds of the sale according to the terms of the contract. The trustee and the Greif Company did so. Before December 31, 1917, the date of the expiration of the contract, these staves

had been delivered to the Greif Company, had been sold by it, and their prices accounted for according to the terms of the agreement. This action of these parties was on January 16, 1918, approved and confirmed by the referee, and a new contract made between them by his direction, upon the same terms as that of July 27, 1916, and then they proceeded to perform that contract.

[2-4] Now the complaint of the Greif Company is that, after all these things had been done, the court below, by its decree of December 18, 1918, has in substance ordered it to pay to the trustee the full purchase price of the staves on hand at the time of the adjudication, a purchase price which by its advance to Booser before the adjudication in accordance with the terms of the contract it had already paid. In Gage Lumber Co. v. McEldowney, 207 Fed. 255, at page 259, 124 C. C. A. 641, at page 645, Circuit Judge Warrington well says:

"A court of bankruptcy views transactions of this kind upon the broadest equitable principles, and does not hesitate to effectuate the actual intent of transactions honestly had with a bankrupt, without much restraint as to formality or procedure. Hurley v. Atchison, Topeka & Santa Fé Ry., supra. 213 U. S. at page 132, 29 Sup. Ct. 466, 53 L. Ed. 729, approving language of Circuit Judge Putnam."

In Atchison, Topeka & Santa Fé Ry. v. Hurley, 153 Fed. 503, 508. 82 C. C. A. 453, 458, Adams, Circuit Judge, said:

"The administration and distribution of the property of bankrupts is a proceeding in equity (In re Rochford, 59 C. C. A. 388, 124 Fed. 182), and should be conducted on broad equitable lines, with a view of recognizing and enforcing the rights of all parties claiming an interest in the estate, whether they be legal or equitable, or both."

Let us consider the claims of the bank and the trustee to the second payment from the Greif Company of the purchase price of these staves in the light of these principles. They first made their application for this relief more than seven months after, by order of the court the trustee had adopted, and more than two months after the trustee and the Greif Company had completed the performance of, the contract of December 27, 1916. The referee found and adjudged that that contract was fair, and was so advantageous to Booser and to his estate that it ordered it adopted and completed by the parties thereto, and then caused the trustee to make a new contract of the same character with the Greif Company for the succeeding year. Pursuant to the first contract the Greif Company had at the time of the adjudication advanced $20,500, and had paid in full the purchase price of the staves, it had by the contract and this advance caused their production and the profit to the Booser estate from the performance of the agreement, and it had done this in consideration of Booser's covenant that these staves should be delivered to it as fast as they were manufactured. The bank had not loaned or advanced any money to produce the staves, or in reliance upon the ownership thereof by Booser. It had loaned its money many months before the contract of December 27, 1916, and its claim was against Booser for an unpaid balance of his old debt. It appealed to the court below, a court of equity, to deprive the Greif Company of

the benefit and proceeds of the staves for which it had paid, and to the delivery of which it was entitled by the terms of the agreement, by compelling it to pay the purchase price of them the second time.

"A court of equity can act only on the conscience of a party; if he has done nothing that taints it, no demand can attach upon it, so as to give any jurisdiction." Boone v. Chiles, 10 Pet. 177, 210 (9 L. Ed. 388).

The Greif Company had committed no wrong, was guilty of no fraud, its equity in the staves and in their proceeds was strong and compelling, while the claim of the bank was not only without equity, but inequitable, nor was there any evidence in the trial of this case that any other creditor represented by the trustee had any stronger equity than the bank.

The contract and the evidence leave no doubt that the intention of the parties to it and its legal effect was that Booser should operate his stave mill to its capacity throughout the year 1917 and deliver the staves he made from time to time after their manufacture was completed to the Greif Company, that it should pay for them the prices and on the terms therein stated, and that in order to assist Booser in the manufacture of the staves it should pay the purchase prices of the staves in process of manufacture before those prices became due by advances to the amounts stated in the contract to enable Booser to pay for the necessary materials and labor to produce the staves. When the adjudication came the Greif Company's advances had completely paid the purchase price of the staves on hand, and it was entitled to the delivery of them, but they were still in the possession and control of the bankrupt. The naked legal title to and the possession of them were in him, but the entire beneficial equitable interest in them was in the Greif Company, for whose benefit alone the bankrupt held them. Where, as under these circumstances, a manufacturer agrees to make and deliver to a purchaser staves or other articles for specified prices and on fixed terms, one of which is that the purchaser will make specific advances in payment of the purchase price to enable the manufacturer to pay for necessary materials and labor, and at the time of the adjudication in bankruptcy of the latter there is a quantity of the manufactured product which the purchaser's advances have paid for, in the possession of the bankrupt, the equitable right of the purchaser thereto is superior to that of the trustee in bankruptcy or of the unsecured creditors he represents. A., T. & S. F. Ry. v. Hurley, 153 Fed. 503, 505, 507, 509, 510, 82 C. C. A. 453; Hurley v. A., T. & S. F. Ry., 213 U. S. 126, 132, 29 Sup. Ct. 466, 53 L. Ed. 729; Gage Lumber Co. v. McEldowney, 207 Fed. 255, 259, 260, 262, 124 C. C. A. 641.

[5] Moreover, the order of the court below, in so far as it modified the orders of the referee, fails to commend itself to the judgment for another reason. When the adjudication in bankruptcy was made, the Greif Company and the bankrupt were in the midst of the performance of the executory contract of December 27, 1916. The referee in bankruptcy and the trustee, with his consent, were vested with the power and charged with the duty to accept, adopt and perform that

contract, or to renounce it, and thereby to require the Greif Company to continue to perform it or to release it from further performance. The referee and the trustee elected to require performance. The referee ordered the ratification, affirmance, and adoption of the contract by the trustee and directed him to perform it in accordance with the terms thereof. Pursuant to that order the Greif Company and the trustee continued from July 18, 1917, to the expiration of the contract, December 31, 1917, to perform the agreement and completed that performance. The order of the referee, pursuant to which that performance was made, has been affirmed by the court below, and is still in full force. By it the referee and the court below required the Greif Company to continue and complete the performance of the contract, and subjected the trustee and the estate to the liability on their part to perform the bankrupt's part of the contract according to its terms.

In March, 1918, after that contract had been performed, it was too late and too inequitable for the court of bankruptcy to repudiate or rescind, in the absence of fraud or mistake, any of the terms of that contract, and one of those terms was that the staves on hand at the time of the adjudication should be delivered to the Greif Company, and that the proceeds of their sale should be received and accounted for by the Greif Company pursuant to the terms of the agreement. The order of the referee adopting the contract, and the action of the trustee in compliance with that order, induced the Greif Company to continue its advances and complete its performance, so that when the contract expired by its terms on December 31, 1917, its advances were $21,618.33. The trustee and the court below accepted the benefits of the Greif Company's performance and advances, and by their action they were estopped from denying the liability of the trustee and the bankrupt estate to bear the burdens of that contract and of its performance. When the trustee in bankruptcy, by order of the referee or of the court, elects to ratify, confirm, and adopt the executory contract of the bankrupt, he thereby assumes the liabilities of the bankrupt thereunder, and takes the contract in the same plight in which the bankrupt held it. A., T. & S. F. Ry. v. Hurley, 153 Fed. 503, 510, 82 C. C. A. 453, and cases there cited; In re Miley (D. C.) 187 Fed. 177, 180; Eames v. H. B. Claflin Co. (D. C.) 220 Fed. 190, 191; Odell v. Bedford (D. C.) 224 Fed. 996, 997; Mound Mines Co. v. Hawthorne, 173 Fed. 882, 888, 97 C. C. A. 394. The court below and the trustee, by the order of ratification, adoption, and performance of the contract of December 27, 1916, and by accepting the benefits of that performance by the Greif Company, caused the trustee and the estate of the bankrupt to assume the covenants and liabilities of Booser thereunder, and estopped them from denying that the Greif Company was entitled to the staves, logs, and material on hand at the time of the adjudication on the same terms, and to the same extent that it would have been entitled to them if Booser had not become a bankrupt and had completely performed his part of the contract.

[6] Counsel for the bank and for the trustee have exhaustively and forcibly contended that the equities of the trustee and the unsecured creditors he represents in the staves and logs on hand at the time of the adjudication were superior to those of the Greif Company.

They argued that that company was not entitled to the staves, logs, and material on hand upon the terms, of the contract, and that the trustee had the superior right to them and their proceeds, without crediting or allowing the company for the payment for them it had made in advance of their delivery, because the Greif Company and Booser were partners in the manufacture and sale of the staves. But the characters of the parties, one a corporation, in the business of buying and selling materials for the construction of barrels, the other the owner of a mill, engaged in the manufacture of staves, the evidence in this record, and the contract itself, have left no doubt that these parties never intended to be and never were partners, and that the contract was a simple agreement, not of loaning or borrowing money, but of sale of the product of the mill at specified prices, and of advances by the buyer of the purchase prices of the staves in order to assist the vendor in paying for the material and labor necessary for their manufacture, a contract of the nature of that described in Hurley v. A., T. & S. F. Ry., 213 U. S. at page 132, 29 Sup. Ct. 466, 53 L. Ed. 729.

[7] They urge as another reason for the position they take that the Greif Company had no legal recorded lien on the staves and logs for which it had paid. Conceding, but not admitting, that it had no such lien, nevertheless it had the entire beneficial ownership of the staves which it had paid for, an equitable interest which had its inception on December 27, 1916, when the contract was made, and which increased in volume and strength as the amounts of the Greif Company's advances rose, and this equity may not in a court of chancery be disregarded, in the absence of any superior equitable right. They insist that the Greif Company had no equitable lien upon the staves and logs, but, whether its equitable interest be termed a lien or an equitable title, in view of the facts and reasons which have been stated and the authorities which have been cited in the earlier part of this opinion, the conclusion has been irresistibly forced upon the mind that it had at the time of the adjudication an equity in the manufactured product of the mill superior to that of the trustee and of any one he represented, which appeals with compelling force to the conscience of a chancellor. Counsel have cited in support of their contentions many authorities, but an examination of them has failed to persuade that the views already expressed and the decisions which sustain them are not sustained by the better reasons and the greater weight of authority.

And, finally, the fact that the court below and the trustee ratified and adopted the contract of December 26, 1916, caused its complete performance by the Greif Company and the trustee, and accepted its benefits, is a conclusive answer in the opinion of the court to all the contentions for the bank and the trustee in this case.

Let the case be remanded to the court below, with directions to reverse and set aside all that part of its decree which modifies any of the orders of the referee therein, and to approve and confirm the order of the referee of April 10, 1918, which dismissed the petition of the bank for want of equity, and let the Greif Company recover its costs.