### REEVES v. McWILLIAMS CO., Inc., et al.*

### In re HUNT.

(Circuit Court of Appeals, Eighth Circuit. April 24, 1922.)

No. 5834.

Drains ⬤═49—Contractor, who advanced funds to subcontractor under agreement for reimbursement from percentages retained by district, held equitably entitled thereto.

Drainage contractor, who advanced subcontractor funds under subcontractor's agreement that reimbursement was to be made out of percentages retained by drainage district, *held* invested with an equitable right and first claim to the fund so retained for reimbursement for amount so advanced.

Appeal from the District Court of the United States for the Eastern District of Arkansas; Jacob Trieber, Judge.

Suit by the McWilliams Company, Inc., and others, against J. H. Reeves, trustee of the estate of T. D. Hunt, bankrupt. Judgment for plaintiffs, and defendant appeals. Affirmed.

F. C. Mullinix, of Jonesboro, Ark., and F. G. Taylor, of Corning, Ark., for appellant.

Donald B. Craig, of Mattoon, Ill., and L. C. Going, of Memphis, Tenn. (Edward C. Craig, James W. Craig, Jr., James Craig Van Meter, and Fred H. Kelly, all of Mattoon, Ill., on the brief), for appellees.

⬤═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
*Rehearing denied August 18, 1922.

Before SANBORN, STONE, and LEWIS, Circuit Judges.

LEWIS, Circuit Judge. In August, 1915, R. H. and G. A. McWilliams (later incorporated as McWilliams Company), contracted with the commissioners of Drainage District No. 2 of Crittenden County, Arkansas, to excavate ditches and make certain improvements for said district. In February, 1916, a part of the work was sublet to T. D. Hunt. The contract with the district provided that 20% of the amount to be paid McWilliams Company on estimates from time to time should be retained until the work was all completed, and the retention of that percentage applied also to the two sub-contracts with Hunt for the work that he agreed to do. In May, 1917, Hunt was adjudged a bankrupt and the trustee of his estate, with the approval of the referee in bankruptcy, determined to adopt and perform the contracts in behalf of the bankrupt estate. Prior to Hunt's failure, McWilliams Company advanced to him from time to time different sums for the payment of bills incurred by Hunt in performance of his dredging operations, and in the settlements that McWilliams Company made with the district from month to month for the work that had been performed, these advances were deducted from the 80% received and the balance paid over to Hunt. The operations of the trustee did not prove successful, and from time to time McWilliams Company, at the request of the trustee and referee, paid many items of indebtedness incurred by the trustee, with the understanding that it should be reimbursed out of the sums turned over to the company monthly by the district, as had been the practice between the company and Hunt. The 80% of the earned amount for the work done by the trustee did not, however, prove sufficient to reimburse the McWilliams Company, and the balance in its favor was increased from month to month; so that McWilliams Company determined in the early part of 1919 that it would not advance further sums to the trustee as against the 80% without additional security.

This brought about negotiations between the trustee and McWilliams Company and resulted in a written agreement of date April 24, 1919, between them, which was approved by the referee, wherein it was recited that the trustee had become indebted to McWilliams Company and would require further advances in order to operate and complete the contracts, and it was agreed that upon the completion of the contracts, if the trustee should still be indebted to McWilliams Company after taking up the completed estimates, he would procure the assignment to McWilliams Company of the retained percentage held back by the commissioners of said district, subject only to the prior rights of certain named creditors. Thereupon McWilliams Company advanced $400.00 to the trustee to meet his payroll and credited him with $1,-000.00 more. The right to have the retained percentages, as given to McWilliams Company by this contract, was repeated in a contract between the same parties on August 6, 1919; and it was expressly agreed that any and all necessary assignments, or other instruments necessary to effectuate the agreement, would be executed by either party. Mc-

Williams Company continued to make advances, and the trustee continued to operate. At the time he quit or finished there was $5,727.00 in the hands of the commissioners to be applied on the work performed by the trustee, and there being dispute as to whom it should be paid, it was deposited in court to be held until its proper distribution might be determined.

Thereupon McWilliams Company brought this suit, and asked that it be adjudged entitled to it. After the pleadings were made up a master was appointed to take proof and make report. He found that the trustee was indebted for labor and supplies in an amount exceeding $20,000.00; but it was not all incurred in the trustee's efforts to perform Hunt's contracts with McWilliams Company. At the time Hunt became bankrupt he had a similar contract with another drainage district in that locality, and the trustee, with the approval of the referee, elected to adopt and perform that contract also. He did not keep separate accounts for the work done under the different contracts. The master recommended that the $5,727.00 be applied on the payment of the trustee's indebtedness. On exceptions to his report, which were sustained, the court below entered a decree that the $5,727.00 be paid over to McWilliams Company after deducting a certain specified amount due others, about which there is no dispute, and costs. This appeal is from that decree.

We think there can be no doubt that appellee is equitably entitled to the fund and that the decree was right. The sums advanced by McWilliams Company to the trustee were made on the express agreement that reimbursement was to be made out of the retained percentages, and that the retained percentages would be assigned to McWilliams Company for that purpose. The trustee, with the approval of the referee, undertook to repudiate that agreement and refused to make the assignment. He was unable to go on with the work unless he could obtain funds from some source to meet his payroll and purchase necessary supplies. McWilliams Company had made advances to Hunt, and later to the trustee, and by agreement had reimbursed itself out of the 80% received from the commissioners on monthly settlements, but that percentage did not meet the amounts that the McWilliams Company had advanced to the trustee, and it refused to proceed further on that basis. Then it was that the trustee and referee agreed that if McWilliams Company would continue to make the necessary advancements, all sums in the hands of the commissioners applicable to the Hunt subcontracts would be assigned to McWilliams Company, so far as needed to reimburse it. They put that agreement in writing; and under well settled principles of equity it gave to McWilliams Company an equitable right and first claim to the fund. When the sums specified in the decree are first deducted from the fund in court, the remainder will be far less than the amount of the unpaid advancements made by McWilliams Company to the trustee. In fact, the whole of the fund is not sufficient to reimburse McWilliams Company. The facts appear to us to bring the case clearly within the principle announced in the following: Greif Bros. Cooperage Co. v. Mullinix (C. C. A.) 264

Fed. 391; Sieg v. Greene, 225 Fed. 955, 141 C. C. A. 79, Ann. Cas. 1917C, 1006; Root Mfg. Co. v. Johnson, 219 Fed. 397, 135 C. C. A. 139; and cases therein cited.

The decree is affirmed.