## In re DAVID LUPTON'S SONS CO.

### SHANER et al. v. SWIND et al.
### No. 6254.

Circuit Court of Appeals, Third Circuit.
Aug. 13, 1937.

Rawle & Henderson, of Philadelphia, Pa. (Thomas F. Mount, of Philadelphia, Pa., and John W. Henderson, of counsel), for appellants.

Arthur Littleton, of Philadelphia, Pa. (Morgan, Lewis & Bockus, of Philadelphia, Pa., of counsel), for appellees.

Before BUFFINGTON, THOMPSON, and BIGGS, Circuit Judges.

BIGGS, Circuit Judge.

George W. Shaner & Sons, a copartnership, one of the appellants herein, entered into a contract to build a mental hospital at Lakewood, N. J., with Camden County, the State of New Jersey, and gave bond as required by statute (chapter 75, p. 203, Laws 1918, New Jersey, as amended by P.L.1920, p. 243 [Comp.St.Supp.1924, §§ 107—149C(1) to 107—149C(4)]). Under the bond and pursuant to the statute the obligee was bound for the payment by all subcontractors for all materials "used in" the construction of the hospital. Shaner & Sons entered into a contract with David Lupton's Sons Company, the bankrupt herein, for the latter to furnish and deliver 770 steel windows of the so-called detention type for a total price of $24,750. To carry out this contract, the bankrupt ordered 770 sash balances to be used in the steel windows from Caldwell Manufacturing Company. By December 29, 1931, 430 of the 770 sash balances ordered had been delivered to Lupton's Sons Company by the Caldwell Company, and Lupton's Sons Company had delivered 43 completed windows to the hospital on or before the 30th day of March, 1932. On this day, Lupton's Sons Company was duly adjudged a bankrupt by the District Court of the United States for the Eastern District of Pennsylvania. It should be noted that at the time of the adjudication the bankrupt had in its possession 387 sash balances out of the total of 430 delivered to it by the Caldwell Company prior to the bankruptcy and that at that time 340 more sash balances were to be supplied to the bankrupt by the Caldwell Company. Though it is not clear from the record when the Caldwell Company filed its claim in the bankruptcy proceedings, none the less it is conceded that such a claim was filed for the price of the 430 sash balances delivered prior to the adjudication and that the Caldwell Company has received its shares of dividends paid from the estate. Following the adjudication, the trustees of the bankrupt were authorized by the referee to carry out the bankrupt's contract with Shaner & Sons with certain modifications which had been worked out by a series of letters and negotiations between the parties involved. These modifications were as follows: Shaner & Sons agreed to accept all of the steel windows yet to be delivered on or before November 15, 1932, instead of from time to time as they might be required for the completion of the hospital. Under the original terms of the contract Shaner & Sons were to withhold 15 per centum of the purchase price from

the bankrupt until the windows had been delivered, installed, and duly adjusted, but under the contract as modified the trustees were relieved of the obligation to deliver and install the windows. Shaner & Sons were to take delivery f. o. b. the Lupton plant and pay to the trustees net the sum of $20,390 instead of $24,750.

The trustees made the remaining windows, 627 in number, and delivered them to Shaner & Sons in accordance with the modified agreement, and received their money. Shaner & Sons for their part completed their contract for the erection of the hospital on October 11, 1933. On October 6, 1933, the Caldwell Company made a claim upon Shaner & Sons' surety, the Aetna Casualty & Surety Company, for the sum of $2,859.50, which was in fact the price of the 430 sash balances delivered by the Caldwell Company to the bankrupt prior to the adjudication.

The Caldwell Company brought suit against the Ætna Company in New Jersey for the recovery of the amount of its demand. It was agreed by counsel for the respective parties in this proceeding that the sum of $2,859.50 should be set aside from the assets of the estate by the trustees, pending the determination of the rights of the parties to this controversy. Caldwell Company procured a judgment in the New Jersey suit against the Aetna Company in the sum of $2,820.61. This judgment Aetna paid.

It was contended by Shaner & Sons at the hearings before the referee that the trustees had agreed that the contract price of the windows, the sum of $20,390, should be applied by them so as to leave no indebtedness for which Shaner & Sons could be held legally responsible. In our opinion, the referee was correct in finding that there was no agreement to such effect and, since the court below has sustained his finding, we deem it unnecessary to deal further with this phase of the matter. We will therefore deal immediately with the questions of law involved.

It is the contention of the appellants that when the trustees undertook to carry out and complete the contract which already existed between the bankrupt and Shaner & Sons that they undertook it cum onere. The appellants cite Atchison, T. & S. F. Ry. Co. v. Hurley (C.C.A.) 153 F. 503, 510, and Greif Bros. Cooperage Co. v. Mullinix (C.C.A.) 264 F. 391, 397, in support of their position. Otherwise stated, their contention is that the manufacture of the windows by the trustees without paying the Caldwell Company in full for the sash balances incorporated in the windows was not a full performance of the bankrupt's contract, which the trustees had seen fit to assume pursuant to the authority of the court, that the trustees were bound to know that the delivery of the windows would create a liability in Shaner & Sons to pay the Caldwell Company the amount due it. The appellants further contend that the trustees could not make legal delivery of the windows f. o. b. the Lupton plant to Shaner & Sons in accordance with the terms of the modified contract and yet have the windows bear with them an invisible but real debt to be struck upon Shaner & Sons as soon as the windows were used for the very purpose for which they were manufactured; that under the law of New Jersey a general contractor is surety for his subcontractors as to claims for material used in the work; that the contract between Shaner & Sons and the bankrupt was to be executed in New Jersey in that the windows were to be delivered there; and that all of this was known to Lupton's Sons Company and the trustees were chargeable with this knowledge. The appellants further urge upon us that the inevitable consequence of the use of the sash balances in the manufacture of the windows which in turn were delivered to the hospital was to impose the claim of the Caldwell Company for the sash balances upon Shaner & Sons. The appellants argue that when an article is sold for a definite price that price covers the full cost of the article, citing Stoddard v. Hibbler, 156 Mich. 335, 120 N.W. 787, 24 L.R.A.(N.S.) 1075; Anderson Lumber Co. v. Miner Tp. School District, 56 S.D. 586, 230 N.W. 23, for this proposition, but the facts in the cases cited are very different from those in the case at bar, as the appellants candidly admit. The principles therein enunciated cannot be extended to the case at bar. We are asked to deal with a collateral liability arising from the delivery of the goods, a liability dehors the contract and growing out of the statute law of New Jersey as though it were an obligation expressly contracted to be paid within the terms of the contract between the bankrupt and Shaner & Sons, as modified by the trustees. This we cannot do. In our opinion, the appellants have no legal right to the relief claimed by them, which, if granted, would result in the practical

reformation of the contract between the parties.

The judgment of the court below is affirmed.