H. G. PRIZANT AND COMPANY, Plaintiff-Appellant, *v.* GUST K. NEWBERG CONSTRUCTION Co. *et al.*, Defendants-Appellees.

(No. 57043;

First District (4th Division)—June 13, 1973.

Schwartz, Cooper, Kolb & Gaynor, Chartered, of Chicago, (Malcolm M. Gaynor, Narcisse A. Brown, and Gary M. Stern, of counsel,) for appellant.

Carey, Filter & White, and Nachman, Munitz & Sewig, both of Chicago, (Edward M. White and Norman H. Nachman, of counsel,) for appellees.

Mr. JUSTICE ADESKO delivered the opinion of the court:

This action was brought by plaintiff, H. G. Prizant and Company, debtor in possession under chapter XI of the Bankruptcy Act (11 U.S.C. secs. 701—799 (1964)), to recover from defendant, Gust K. Newberg Construction Co., additional expenses incurred in the installation of the ventilation system of the Chicago Civic Center. Various surety companies were also joined as defendants. There was a stipulation of fact including an arbitrator's award to plaintiff of $550,000 for extra expenses incurred. The trial court determined, however, that defendant's payments to plaintiff exceeded the contract price even as increased by the $550,000, which the arbitrator awarded. The court thereupon entered judgment for defendants. Plaintiff appeals from that judgment and raises the following issues for review:

1. Whether a defendant sued by a debtor in possession may

setoff against the debtor in possession's claim amounts paid the debtor in possession and its predecessor; and

2. Whether the burden of proof as to what extent payments were made to the debtor in possession and to the debtor lies upon the plaintiff or upon the defendant.

The facts are as follows:

In September, 1963, Gust K. Newberg Construction Co., the general contractor for the building of the Chicago Civic Center, entered into a contract with H. G. Prizant and Company for subcontract work for the ventilation system of the building. On September 9, 1965, long after performance by Prizant had begun and during such performance, Prizant filed a petition for an arrangement with creditors pursuant to chapter XI of the Bankruptcy Act. Newberg, after learning that Prizant had been named as debtor in possession by the district court with authority to continue to operate its business, notified Prizant as debtor in possession that they were:

"* * * to continue to perform the work to be performed by H. G. Prizant and Company under the terms of its contract with us dated September 5, 1963 (subcontract #482-27) and any amendments or additions thereto. To assist you in the performance of said work, we shall advance and pay to you, as required by you, such sums as are necessary for the payment of labor utilized by you in the performance of the aforesaid work; such payments shall include sums required as and for withholding and unemployment taxes as well as F.I.C.A. In addition, we shall advance and pay to you, as required by you, such sums as are necessary to pay for materials delivered to you for use in said job.

Sums advanced by us shall be utilized by you only as and for payment for labor and material, as aforesaid, supplied in connection with the work upon the Chicago Civic Center and shall not be used by you to pay debts incurred in connection with any other job."

Prizant, as debtor in possession, petitioned for authority and was authorized by the Bankruptcy Court to agree to this proposal and in pursuance thereof the work under the subcontract was completed on June 30, 1966. Shortly thereafter this suit was filed by Prizant, debtor in possession, wherein Prizant alleged the existence of the contract and Prizant's performance under it. Prizant, while conceding that Newberg had paid the contract price provided for in its original contract, alleged that in the course of its performance it was required to furnish labor and material in excess of that reasonably indicated on the contract draw-

ings, and that it was entitled to be paid the fair value of such extra work, which it contended was $2,327,782.76.

It became apparent to the court and to the parties that the matters involved in Prizant's complaint required the application of expertise and specialized knowledge in the field of building construction, and with the consent of all the parties, the issues in Prizant's claim referred to McKee-Berger-Monsueto, Inc., construction consultants and engineers, for a determination of the amounts, if any, to which Prizant was entitled with respect to its claims for additional labor and material. McKee-Berger-Monsueto subsequently reported to the court its finding that Prizant was entitled to $550,000 on its claim for additional work and materials, but the report made no apportionment as to work performed prior to the proceeding under the Bankruptcy Act or subsequent thereto and specifically, neither considered nor made any finding with respect to claims by Newberg for setoff or recoupment for payments made to Prizant in excess of the contract price.

A stipulation was subsequently entered into by the parties by which it was agreed that payments to H. G. Prizant and Company, including payments to Prizant as debtor in possession, exceeded the contract price, even when increased by $550,000, which McKee determined should be added to the contract price. The court thereupon entered judgment for defendants, finding that defendants had in fact paid more than the contract price, even as increased. Plaintiff appeals from that judgment.

Plaintiff's initial contention on appeal is that the trial court erred in allowing defendant, Newberg to offset against amounts due to Prizant as the debtor in possession monies paid to Prizant as debtor. Plaintiff maintains that it, as debtor in possession under section 342 of the Bankruptcy Act (11 U.S.C. § 742 (1964)), is a separate legal entity from H. G. Prizant and Company, the debtor, and is in the capacity of a trustee. Plaintiff concludes that payments made to the debtor prior to bankruptcy thus cannot be offset against amounts which become due and owing to the debtor in possession after bankruptcy, as the debtor, and the debtor in possession although both are named H. G. Prizant and Company, are in fact two distinct entities under the law, and the obligations of one would not be the obligations of the other. Plaintiff cites several cases in support of his contention.

In *Howard v. Magazine & Book Co.*, 147 App.Div. 335, 131 N.Y. Supp. 916, upon which plaintiff primarily relies, the Appellate Division of the New York Supreme Court held that one who incurred a debt to a bankrupt and to the trustees of the bankrupt's estate for material and services provided by the bankrupt and by the trustees could not set

off amounts owing from the bankrupt itself for advertising space provided to the bankrupt. This 1911 New York case, in which two of the five justices dissented, is distinguishable, however, from the case at bar. The court in *Howard* held that the trustees are not obliged to continue to perform the contracts of the bankrupt and that damages growing out of such failures are properly claimed against the bankrupt and not against the trustees. The court went on to state the rule that:

"A debt to or from the trustee in bankruptcy and arising after the bankruptcy in the management of the estate cannot be set off against a debt due from or to the bankrupt before the bankruptcy."

In *Howard*, the court thus states formalistically that no debts incurred by a bankrupt can be utilized to offset amounts owed to the trustee after bankrupty. In *Howard*, however, unlike the instant case, there is no indication that the trustees ever expressly assumed the original contract of the bankrupt, thus equitably taking the liabilities of that contract along with its benefits. In the case at bar, there is evidence that the debtor in possession expressly assumed the original contract of the debtor and would be in equity liable for the liabilities of that contract as well as its benefits. Further, in Howard, there is indication that the disputed amounts arose out of separate transactions as the claim by the trustees was for material and services and the claim by *Magazine* was for the value of advertising provided. The instant case concerns a single transaction.

The other cases relied upon by plaintiff similarly involve the attempt to formalistically distinguish between pre and post-bankruptcy debts without analyzing the equities of the individual situation and the manifest intent of the parties, and involve situations which are distinguishable from the instant case in that there has generally been no evidence of assumption of a pre-bankruptcy contract by the post-bankruptcy trustee in those cases. We do not feel constrained in the instant case to arbitrarily find that pre-petition claims of a creditor cannot be offset against post-petition claims of the debtor without careful analysis of the particular facts involved.

■■ The case at bar represents a situation where a sub-contractor became insolvent during the course of performing the work contracted for. Under Bankruptcy Law such a debtor has the right to reject contracts entered into prior to the filing of a petition for an arrangement with creditors under chapter XI of the Bankruptcy Act (11 U.S.C. § 713(1) (1964)), but any party injured by such rejection can claim as a creditor (11 U.S.C. § 753 (1964)). In the instant case, when Newberg learned of the insolvency of its sub-contract, Prizant, and of Prizant's continuing

its business as debtor in possession, Newberg was determined to have Prizant finish the work it had begun, rather than terminate the contract and proceed to completion with another sub-contractor. Newberg further offered to make all payments necessary for completion of the work without regard to contractual limitations otherwise affecting payment. When Prizant, as debtor in possession, and with the approval of the bankruptcy court, made the judgment not to reject the contract with Newberg, but rather to assume it and continue performance under it, Prizant had obviously determined that it would be in a better position if it completed its contract and put itself in a position to assert its claims for extra labor and material rather than to reject and thereby breach its contract which would have enabled Newberg to claim for any damages ensuing.

■■ Prizant now seeks to obtain from Newberg the value of its services above the original contract price as determined by the arbitrator, but without regard to the total payments Newberg has already made, which the trial court found exceeded the original contract price. It is well settled that in actions under the Bankruptcy Act, the debtor or the trustee is not free to retain the favorable terms of an executory contract and reject only the unfavorable ones. The rule is stated in *Collier on Bankruptcy*, 14th Ed. (1971) vol. 8, par. 3.15(7), 228:

> "An executory contract cannot be rejected in part, and assumed in part. The debtor, or the trustee, is not free to retain the favorable features of the contract, and reject only the unfavorable ones. Assumption carries with it all of the burdens as well as the benefits of the contract."

The United States Supreme Court in *Thompson v. Texas Mexican R.R. Co.*, 328 U.S. 134, 141, 90 L.Ed. 1132, 1137, 66 S.Ct. 937, 942, stated that "* * * the bankruptcy rule is that he [the trustee] takes the contracts of the debtor subject to their terms and conditions. Contracts adopted by him are assumed *cum onere*." The Supreme Court in *Thompson* cited *Grief Bros. Cooperage Co. v. Mullinix*, 264 F. 391 in support of that statement.

In *Grief Bros.*, advances were made by *Grief* to a debtor under an agreement whereby the debtor was to obtain lumber for the manufacture of barrel staves for *Grief*. When the debtor became insolvent, the contract was assumed by the trustee. Thereafter additional payments were made by *Grief* and deliveries of staves were made by the Trustee, but at the conclusion of the contract, the Trustee contended that *Grief* had no right to apply advances made before the adjudication of bankruptcy to deliveries by the trustee after bankruptcy. The court held at 396, 397:

> "When the adjudication in bankruptcy was made, the Grief

Company and the bankrupt were in the midst of the performance of the executory contract of December 27, 1916. The referee in bankruptcy and the trustee, with his consent, were vested with the power and charged with the duty to accept, adopt and perform that contract, or to renounce it, and thereby to require the Grief Company to continue to perform it or to release it from further performance. The referee and the trustee elected to require performance. * * * [T]he referee and the court below required the Grief Company to continue and complete the performance of the contract, and subjected the trustee and the estate to the liability on their part to perform the bankrupt's part of the contract according to its terms.

In March, 1918, after the contract had been performed, it was too late and too inequitable for the court of bankruptcy to repudiate or rescind * * * any of the terms of that contract * * *. [T]he action of the trustee * * * induced the Grief Company to continue its advances and complete its performance, so that when the contract expired by its terms on December 31, 1917, its advances were $21,618.33. The trustee and the court below accepted the benefits of the Grief Company's performance and advances, and by their action they were estopped from denying the liability of the trustee and the bankrupt estate to bear the burdens of that contract and of its performance. When the trustee in bankruptcy, by order of the referee or of the court, elects to ratify, confirm and adopt the executory contract of the bankrupt, he thereby assumes the liability of the bankrupt thereunder, and takes the contract in the same plight in which the bankrupt held it. [Citations.]"

The United States Court of Appeals for the Third Circuit also considered an issue similar to that of the case at bar *In re Italian Cook Oil Corp* (3rd Cir. 1951), 190 F.2d 994. In that case a debtor contracted for delivery of products to the government, and assigned the proceeds to be received from the government as collateral for a bank loan. The debtor then filed a petition for re-organization under the Bankruptcy Act. The trustee in bankruptcy assumed the contract with the government and commenced performance. The trustee took the position that since the bank made its advance prior to bankruptcy and the goods were delivered by the trustee subsequent to bankruptcy, the trustee was entitled to the entire sum due from the government without setoff for the money already received from the bank. The trustee contended that the bank only had a claim against the bankrupt's estate for the monies it

advanced. The court held that as the trustee had assumed the contract, it stood in the same position as the debtor and it must honor the assignment for collateral of any advance by the bank. The court held:

> "* * * the trustee is given the right to adopt or reject any executory contract. He must do one or the other. * * * The trustee, however, may not blow hot and cold. If he accepts the contract he accepts it *cum onere*. If he receives the benefits he must adopt the burdens. He cannot accept one and reject the other."

A recent case expressly recognizing a right to setoff in circumstances similar to the case at bar is *DiLauro v. Electronic Wholesalers, Inc.*, 239 A.2d 162 (D.C.Mun.Ct.App. 1968). In *DiLauro*, a purchaser had a credit with a seller for returned merchandise. At the time of the seller's bankruptcy, there were several orders outstanding from the purchaser which were still unfilled. The trustee proceeded to fill those orders and later contended that he was entitled to the full purchase price of the goods delivered to the purchaser without setoff for the credit the purchaser had accrued before the seller's bankruptcy. In upholding the right of setoff, the court held:

> "In conclusion, we hold that the trustee did not reject Electronic's [the purchaser] orders but instead adopted and took their burdens as well as their benefits."
>
> * * *
>
> "It is also generally accepted that the court in a reorganization proceeding * * * may apply equitable principles, including the equity rule of set-off if warranted by the circumstances. [Citation] Here all the equities favor Electronic and the trial court properly allowed set-off."

■■ We must conclude, therefore, that where a debtor in possession assumes an executory contract of the debtor's and accepts the benefits of such contracts, equity requires that the debtor in possession also accept the burdens of such contracts. Thus, amounts owing from a bankruptcy debtor on an executory contract could be properly set off against amounts owing to a post-bankruptcy debtor in possession where that debtor assumed the contract and equity would be served by allowing such set-off.

Plaintiff, in the instant case, however, argues that even if setoff would be appropriate where a trustee or a debtor in possession has assumed an executory contract of the debtor's, the court erred in allowing setoff in the instant case, because the debtor in possession had not in fact assumed the contract of the debtor.

██ Plaintiff contends that in the case at bar, the debtor in possession could not have assumed the contract of the debtor with Newberg as Newberg terminated that contract. Plaintiff attempts to support his contention by citing two sentences from a letter from Newberg to Prizant which was stipulated into evidence. Plaintiff maintains that the language, "You are to continue to perform the work to be performed by H. G. Prizant and Company under the terms of its contract with us dated September 5, 1963 (subcontract #482-27) and any amendments or additions thereto", and "All the foregoing advances shall apply toward payment for sums due to you as debtor in possession for services rendered, as aforesaid, commencing September 10, 1965", is compelling evidence that Newberg entered into a new contract with the debtor in possession and that the debtor in possession could not therefore assume the "old" contract. We are not so persuaded. Our examination of the record in the instant case reveals that the parties operated as if the debtor in possession had assumed the executory contract of the debtor. Indeed, the complaint filed by the debtor in possession seeks recovery under a single contract for labor and materials furnished between the commencement of the contract in 1963 and the completion of that contract in mid 1966. Evidence introduced during the litigation does not demonstrate any intent by the parties to create a new contract whose inception would be the date of the bankruptcy.

We find that as evidenced by the manifest intent of the parties, there was in the case at bar, an assumption by the debtor in possession of the debtor's executory contract with Newberg. We conclude that the equities of the instant case compel the allowance of the setoff of pre-bankruptcy and post-bankruptcy claims, and that the trial court did not err in so ruling.

Plaintiff's other contention on appeal is that the court below erred by not placing the burden of proving Newberg's payment to Prizant and the apportionment of that payment as to pre-bankruptcy or post-bankruptcy, upon Newberg, and that the court erred by not finding that Newberg had failed to meet that burden. We cannot agree with plaintiff's contention. The evidence in this case which was offered by stipulation of all the parties provided that the contract price for the work provided by Prizant was $2,797,091.36, that an additional $550,000.00 was owed Prizant for additional work as determined by the arbitrator, and that payments by Newberg to Prizant totaled $3,353,991.27, plus an additional payment of $29,730.41. The court thereafter held that plaintiff had received full payment for all work provided under the contract and for additional work as determined by the arbitrator.

■■ As we have already determined that the executory contract between the debtor and Newberg had been assumed by the debtor in possession and that the trial court properly allowed the setoff of pre-bankruptcy and post-bankruptcy claims, under the contract, we find that the evidence admitted clearly provided payment to Prizant in excess of the contract price owed even when increased by the arbitrator's award for additional work and that the trial court did not err in so determining.

For the foregoing reasons, the judgment of the Circuit Court of Cook County is hereby affirmed.

Judgment affirmed.

BURMAN, P. J., and DIERINGER, J., concur.